**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHARLES SESBERRY,

                             Plaintiff,

vs.                                                    Case No.  3:13-cv-1064-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                             Defendant.
_____/

## <u>OPINION AND ORDER</u>[1]

### <u>I. Status</u>

Charles Sesberry ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying his claims for supplemental security income ("SSI")

and social security disability insurance benefits ("DIB").  Plaintiff's alleged inability to work

is based on the following: "[l]eft hand injury"; "lower back injury"; "depression"; "mental

illness"; "high blood pressure"; "severe back pain"; and "numbness in [his] hand." Transcript

of Administrative Proceedings (Doc. Nos. 13, 18; collectively, "Tr." or "administrative

transcript"), filed December 17, 2013, and February 18, 2014, respectively, at 352.[2] Plaintiff

also alleged problems with his "foot and legs" as additional causes of his alleged inability

to work.  Tr. at 458; see also Tr. at 476 (listing his "right knee and feet" as new problems

since his last disability report).  On September 18, 2008, Plaintiff filed an application for SSI,

---

[1]        The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed
December 17, 2013; Reference Order (Doc. No. 16), entered December 20, 2013.

[2]        The pagination is continuous between the two filings.

alleging an onset disability date of January 20, 2003, <u>see</u> Tr. at 279-85, and an application for DIB, alleging an onset disability date of August 22, 2002, <u>see</u> Tr. at 288-89.  Plaintiff's applications were denied initially, <u>see</u> Tr. at 155-57 (DIB), 163-65 (SSI), and were denied upon reconsideration, <u>see</u> Tr. at 172-73 (DIB), 176-77 (SSI).

On May 5, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  Tr. at 47-82.  At the time of the hearing, Plaintiff was forty-eight (48) years old.  Tr. at 54.  On July 29, 2010, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision.  Tr. at 124-38.  Plaintiff requested that the Appeals Council review that decision, and while the case was pending appeal before the Appeals Council, on September 29, 2010, Plaintiff filed additional applications for DIB and SSI, alleging an onset date of July 30, 2010, <u>see</u> Tr. at 311-16 (SSI), 317-18 (DIB).[3]

On October 6, 2011, the Appeals Council vacated the ALJ's July 29, 2010 decision and remanded the case back to the ALJ.  Tr. at 146-49.  The Appeals Council recognized that Plaintiff had filed subsequent applications in September 2010, and the Appeals Council ordered the ALJ to "associate the claim files and issue a new decision based on the associated claims."  Tr. at 148.  On January 17, 2012, the ALJ held a second hearing at which Plaintiff, who was represented by counsel, and a VE testified.  Tr. at 83-116.  The ALJ issued a Decision on March 12, 2012, finding Plaintiff not disabled through the date of the Decision.  Tr. at 20-38.

---

[3]     The alleged onset date for purposes of the appeal before this Court is August 22, 2002. Tr. at 23; <u>see</u> Plaintiff's Brief (Doc. No. 19), filed February 18, 2014, at 3; Memorandum in Support of the Commissioner's Decision (Doc. No. 23), at 1.

The Appeals Council received from Plaintiff and incorporated into the administrative transcript some additional evidence in the form of a brief from Plaintiff's counsel, see Tr. at 6, 485-87; and progress notes from Baptist Health dated December 30, 2009, see Tr. at 6, 1215-29.  On July 11, 2013, the Appeals Council denied Plaintiff's request for review, see Tr. at 1-4, thereby making the ALJ's March 12, 2012 Decision the final decision of the Commissioner.  On August 30, 2013, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: 1) whether "[t]he Commissioner failed to adequately explain why she was not fully crediting the opinions of examining consultants, Dr. [Lynn] Harper-Nimock and Dr. Lily Rocha, as to [Plaintiff's] limitations"; 2) whether "[t]he Commissioner failed to articulate 'good cause' for failing to credit Dr. [Steven P.] Cuffe's treating psychiatrist opinion and the examining [psychologist] opinion of Dr. [Lynda] Walls"; and 3) whether "[t]he Commissioner erred in failing to explain her reasoning for not crediting the limitations arising from [Plaintiff's] painful bilateral foot condition."  Plaintiff's Brief (Doc. No. 19; "Pl.'s Br."), filed February 18, 2014, at 1; see id. at 11-25.  On May 21, 2014, Defendant responded to the issues raised by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.").  After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 23-37.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 22, 2002, the alleged onset date."  Tr. at 23 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: hernia, degenerative disc disease (DDD), depression, anxiety, right torn meniscus, and posttraumatic stress disorder (PTSD)."  Tr. at 23 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of

---

[4]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform less than the full range of light work as defined in 20 CFR [§] 404.1567(b) and [§] 416.967(b) except [Plaintiff] is able to lift and/or carry 20 pounds occasionally and lift and/or carry 10 pounds frequently. [Plaintiff] may occasionally climb stairs, balance, stoop, kneel, and crouch but should never climb ropes, ladders, and scaffolds or crawl. [Plaintiff] must use an assistive device such as a cane at all times. [Plaintiff] can do simple, routine, repetitive tasks involving up to three-step commands. [Plaintiff] is limited to jobs involving only occasional changes in the work setting and he should only do occasional judgment or decision-making. [Plaintiff] is limited to jobs involving occasional interaction with the general public and occasional interaction with co-workers.

Tr. at 25 (emphasis omitted). At step four, the ALJ found Plaintiff "has no past relevant work." Tr. at 36 (emphasis and citation omitted). At step five, after considering Plaintiff's age (forty-one years old on the alleged disability date), education ("at least a high school education"[5]), work experience ("no past relevant work"), and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 36 (emphasis and citations omitted). Specifically, relying on the testimony of the VE, the ALJ identified jobs such as "Order Caller," "Silver Wrapper," and "Cleaner/Polisher." Tr. at 37. The ALJ concluded, therefore, that Plaintiff "has not been under a disability . . . from August 22, 2002, through the date of th[e D]ecision." Tr. at 37 (emphasis and citation omitted).

---

[5]     Plaintiff points out that this is error, because Plaintiff only completed the eleventh grade. See Pl.'s Mem. at 3 n.1; Tr. at 55. Although the ALJ made this finding, he noted in the body of his Decision that Plaintiff "completed the 11th grade." Tr. at 32.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises three issues on appeal.  Because the first two issues relate to medical opinions, they are addressed together, followed by a discussion of Plaintiff's third issue.

### A.  Medical Opinions

As to Plaintiff's physical impairments, Plaintiff argues that the ALJ erred by failing "to adequately explain why []he was not fully crediting the opinions of examining consultants, Dr. Harper-Nimock and Dr. Lily Rocha."  Pl.'s Mem. at 11 (emphasis omitted).  Specifically, Plaintiff argues that "the ALJ failed to incorporate Dr. Harper-Nimock's opinion as to [Plaintiff's] moderate limitations in prolonged standing, sitting and walking (particularly when coupled with the need for a cane 'at all times' as determined by the AL[J])."  Id. (emphasis omitted).   Regarding Dr. Rocha's opinion, Plaintiff contends that the ALJ's reasons for discrediting that opinion are not supported by substantial evidence, and in fact, "are equally applicable to Dr. McCormick's opinion" on which the ALJ relied.  Id. at 16.  With respect to Plaintiff's mental impairments, he asserts that the ALJ's reasons for discrediting Dr. Cuffe's treating opinion do not amount to the requisite good cause, and his reasons for not crediting Dr. Walls's examining opinion are not supported by substantial evidence.  See id. at 18.

### 1.  Legal Framework

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the

---

[6]      "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified

---

[7]        A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted).

An ALJ is required to consider every medical opinion. <u>See</u> 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham</u>, 660 F.2d at 1084 (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir.1987)); <u>see also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

## 2.  Medical Opinions Regarding Physical Limitations

### a.  ALJ's Decision

The ALJ assigned "weight" to Dr. Harper-Nimock's opinion, finding it to be "consistent with the [ALJ's RFC]." Tr. at 34. The ALJ noted that "Dr. Harper-Nimock opined that . . . [Plaintiff] had moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting." Tr. at 34. The ALJ found "th[at] limitation to be consistent with the RFC . . . finding [Plaintiff] limited to a reduced range of light work." Tr. at 34; <u>see</u> Tr. at 35 (ALJ noting that he gave Plaintiff "the benefit of the doubt, [and] limited him to a reduced range of light lifting, carrying, sitting, standing, walking, and climbing as it is consistent with Dr. Harper-Nimock's opinion").

In assessing Dr. McCormick's opinion, the ALJ stated that he "agrees with Dr. McCormick's assessment and summary, which indicated that [Plaintiff] demonstrated having several non-patho[]physiologic features on his physical examination, and he had widespread dysfunction that did not clearly correlate with the nature of the problems in which he identified." Tr. at 35 (citation omitted). The ALJ found that Dr. McCormick's assessment "may be used towards [Plaintiff's] credibility as a whole and supports that his allegations are not as severe as he contends." Tr. at 35.

As to Dr. Rocha's opinion, the ALJ found as follows:

> [N]o weight [is given] to Dr. Rocha's consultative examination and opinion, because Dr. Rocha saw [Plaintiff] at the request of his attorney, so h[er] opinion may be based upon secondary gain. Additionally, Dr. Rocha's findings of disability are not clinically correlated with the previous consultative examination given by DDS Dr. McCormick[,] who noted that [Plaintiff's] problems did not clearly correlate with the nature of the problems that he identified. Last, Dr. Rocha only saw [Plaintiff] on one occasion, which detracts away from adequately assessing [Plaintiff's] true abilities or a finding of disability.

Tr. at 35 (citations omitted).

### b. Analysis

The ALJ's discussion of Dr. Harper-Nimock's opinion is not a model of clarity. First, the ALJ assigned the opinion unspecified "weight." The assignment of "weight," without a modifier such as little or great, is not entirely clear or helpful when reviewing the ALJ's Decision. Second, pertinent to Plaintiff's argument, the ALJ found Dr. Harper-Nimock's assessment that Plaintiff "had moderate limitations for prolonged sitting, standing, [or] walking" to be "consistent" with his RFC assessment. Tr. at 34. The RFC assessment, however, limits Plaintiff to "less than the full range of light work" and requires Plaintiff to "use an assistive device such as a cane at all times." Tr. at 25 (emphasis omitted). There

are no other indications in the RFC as to Plaintiff's abilities relating to prolonged sitting, standing, or walking.  If the ALJ intended the requirement that Plaintiff use an assistive device at all times to account for Plaintiff's moderate limitations in prolonged sitting, standing, and walking, the ALJ failed to explain as much.  This is especially critical here because the Regulations dictate that "a job is in [the light] category when it requires <u>a good deal of walking or standing</u>, or when it involves <u>sitting most of the time</u> with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b) (emphasis added).  The ALJ failed to explain how using an assistive device such as a cane at all times accounts for the limitations assigned by Dr. Harper-Nimock, or if he did not intend to credit that portion of the opinion, the ALJ failed to explain why he was not doing so.  Overall, the ALJ's lack of specificity with respect to Dr. Harper-Nimock's opinion frustrates judicial review.

The reasons the ALJ provided for discrediting Dr. Rocha's opinion are equally applicable to Dr. McCormick's opinion on which the ALJ apparently relied.  Dr. Rocha was hired by Plaintiff and Dr. McCormick was hired by the Commissioner, so under the ALJ's logic, both doctors' opinions could "be based upon secondary gain."  Tr. at 35.  "An examining doctor's findings are entitled to no less weight when the examination is procured by [Plaintiff] than when it is obtained by the Commissioner."  <u>Lester v. Chater</u>, 81 F.3d 821, 832 (9th Cir. 1995) (citation omitted).  Indeed, the Court notes that it is generally a plaintiff's burden to prove disability, and a plaintiff cannot be faulted for gathering evidence in an attempt to meet that burden.  The ALJ apparently considered it significant that Plaintiff underwent the examination through an attorney referral and discredited Dr. Rocha's opinion in part because the "opinion may be based upon secondary gain."  Tr. at 35.  In discrediting

-12-

Dr. Rocha's opinion, the ALJ improperly took into consideration the fact that Plaintiff's counsel procured it.

Additionally, both Dr. Rocha and Dr. McCormick examined Plaintiff on one occasion. Dr. Rocha provided a narrative of her findings, Tr. at 1081-82, and completed a detailed Physical RFC Questionnaire, Tr. at 1083-88.  Dr. McCormick provided a narrative of his findings, Tr. at 1052-55, and completed a Range of Motion Report form, Tr. at 1056-58. That they rendered somewhat different findings (each based on a one-time examination) does not automatically make one more reliable than the other.  Here, the ALJ merely credited Dr. McCormick's conclusion over Dr. Rocha's detailed RFC assessment.  The ALJ's lack of explanation as to why Dr. McCormick's conclusion was more credible than Dr. Rocha's findings frustrates judicial review.  Compounding the error is the fact that the ALJ indicated he was relying on Dr. McCormick's findings to discredit Plaintiff's testimony.  See Tr. at 35.  It is not clear how much, if at all, the ALJ relied on Dr. McCormick's assessment in determining the actual limitations imposed in the RFC.  Accordingly, on remand, the ALJ shall reevaluate these opinions.

### 3.  Medical Opinions Regarding Mental Limitations

#### a.  ALJ's Decision

As to Dr. Cuffe's opinion set forth on the Mental RFC Questionnaire, the ALJ assigned it "little weight" for two reasons.  Tr. at 36.  First, the ALJ noted that "Dr. Cuffe's GAF scores of 50 to 55 are accounted for in the RFC delineated [in the ALJ's Decision, but that those scores] are inconsistent with [Dr. Cuffe's] indications of [Plaintiff] not being able to perform various designated tasks or functions on a regular, reliable and sustained basis."

-13-

Tr. at 36.  Second, the ALJ found that Dr. Cuffe's "Questionnaire is inconsistent with his own treatment records where he noted that [Plaintiff's] psychiatric problems were not disabling and [Plaintiff] himself reported that he was doing well on his psychological medications."  Tr. at 36 (citations omitted).

With respect to Dr. Walls's opinion, the ALJ found as follows:

> [S]ome weight is given to Dr. Walls'[s] overall assessment and opinion but . . . the overall evidence of record does not support a finding that [Plaintiff] has disabling anxiety.  The [ALJ] does not give significant weight to Dr. Walls'[s] statement that [Plaintiff] would not be able to regularly attend to a routine and maintain a schedule.  No significant weight is given to this statement because Dr. Walls qualifies this finding with "he appears," and, Dr. Cuffe, a treating physician, recently said that [Plaintiff's] psychological problems are not disabling.  Furthermore, Dr. Walls[] only saw [Plaintiff] on one occasion for a consultative examination.  However, the [ALJ] accords greater weight to Dr. Walls'[s] opinion that [Plaintiff] vocationally <u>appeared</u> to be capable of following, understanding, and remembering simple instructions and directions, which supports the RFC . . . limit[ing Plaintiff] to simple, routine, repetitive tasks involving up to three-step commands.

Tr. at 35 (emphasis added) (citations omitted).

### b.  Analysis

Regarding the ALJ's analysis of Dr. Cuffe's opinion, the ALJ's first reason regarding Plaintiff's GAF scores is not adequately explained by the ALJ.  The ALJ simply concludes that GAF scores between 50 and 55, which are indicative of moderate to severe symptoms, do not correlate with Plaintiff being unable to perform various tasks.  <u>See</u> Tr. at 31 (ALJ recognizing that a GAF score of 50 to 55 "means serious to moderate symptoms in social, occupational, or school functioning").  But, the ALJ does not provide any explanation as to why such a conclusion is warranted, and the lack of explanation frustrates judicial review.

As to the second reason, what Dr. Cuffe actually wrote in the treatment note is this: "I advised [Plaintiff] psychiatric disorders would not be the primary reason for disability, but as a response to his physical problem, it may be taken into account." Tr. at 1121.  A plain reading of Dr. Cuffe's note does not match the ALJ's finding that Plaintiff's "psychiatric problems were not disabling."  This is so especially when Dr. Cuffe's treatment notes are read together with his opinion as stated on the Mental RFC Questionnaire.  Moreover, while it is true that at one appointment Plaintiff reported he was "feeling calmer," Tr. at 1121, and at the next appointment he "ha[d] been doing 'fair,'" Tr. at 1120, Dr. Cuffe continued Plaintiff on a medication regime and advised that Plaintiff would return in three months.  Tr. at 1120. The ALJ's assessment of Dr. Cuffe's opinion is flawed for the reasons stated above.

The ALJ's assessment of Dr. Walls's opinion is flawed as well.  First, the undersigned notes that the ALJ discredited one portion of Dr. Walls's opinion because it started with "appears," while at the same time, crediting another portion of Dr. Walls's opinion also starting with "appears."  Tr. at 35.  This inconsistency without further explanation cannot stand.  Second, as found above, the ALJ misinterpreted Dr. Cuffe's statement regarding Plaintiff's psychological problems; therefore, using this misinterpretation to discredit Dr. Walls's opinion is error.  Third, while it is proper to consider frequency of treatment in determining how much weight to afford an opinion, the ALJ discredited Dr. Walls's opinion in part because Plaintiff only saw Dr. Walls on one occasion, while at the same time crediting the opinions of physicians who never examined Plaintiff. See Tr. at 35.  In sum, the ALJ erred in consideration of Dr. Walls's opinion.

Upon review, the undersigned finds that the ALJ erred in evaluating the medical opinions as discussed above.  In light of the errors identified, the undersigned finds that the ALJ's Decision is not supported by substantial evidence.

### B.  Plaintiff's Bilateral Foot Condition

Plaintiff next argues that "[t]he ALJ failed to analyze the impact of [Plaintiff's] bilateral foot pain and numbness for which he received injections and treatment from multiple medical sources during the relevant time period." Pl.'s Mem. at 24.   The ALJ, in summarizing Dr. Rocha's opinion, indicated that Plaintiff told Dr. Rocha that he had "injuries to his heels [a] year ago and was placed in a left leg cast to try to help with some swelling of that leg but nothing really helped."  Tr. at 30.  In summarizing notes from Fatima Santana-Milfred, M.D., the ALJ noted that Dr. Santana-Milfred's impression of Plaintiff included "plantar fasci[]tis."  Tr. at 31.  The ALJ, however, never substantively addressed whether Plaintiff's problems with his feet cause any work-related limitations.  Given that this matter is due to be reversed and remanded for reconsideration of the medical opinions as discussed above, the ALJ will also be directed to adequately address whether Plaintiff's foot condition(s) affects his ability to work.

### V.  Conclusion

After due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

-16-

(A)    Reconsider the medical opinions of record, specifically the opinions of Drs. Harper-Nimock, Rocha, McCormick, Walls, and Cuffe; clearly specify the weight assigned to each opinion and articulate the reasons therefor;

(B)    Address whether Plaintiff's foot condition(s) affects his ability to work; and

(C)    Take such other action as may be necessary to resolve this matter properly.

2.    The Clerk is further directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 3, 2015.


_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge


jlk
Copies to:
Counsel of Record

-17-